**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

TOM ANDERSON; MAUREEN
ANDERSON; GEORGE LANGE;
DANIEL BENZIE; SUSAN BENZIE;
MICHAEL FOLSTED; LYNN
FOLSTED; TMA FAMILY LP;
STURGEON LAKE FARM LLC; and
STURGEON LAKE HOLDINGS LLC,

                Plaintiffs,

v.

WINDEMERE TOWNSHIP; ALAN
OVERLAND; TONY BAKHTIARI;
PAUL HORGEN; VERN C.
ANDERSON II; PHIL WHITE; DICK
HERZOG; AMY PERRINE; and SCOTT
BECKMAN,

                Defendants.

Case No. 25-cv-1614 (LMP/LIB)


**ORDER DENYING PLAINTIFFS'
MOTION FOR A
PRELIMINARY INJUNCTION**

---

Seth A. Nielsen, **Legacy Law LLC, Moose Lake, MN**, for Plaintiffs.

Emma M. Baker and Jason J. Kuboushek, **Iverson Reuvers, Bloomington, MN**, for Defendants.

      In the Land of 10,000 Lakes, Minnesotans have a deep-rooted love for the water, where traditions and memories are built along the shorelines. That affection can make waves, though, as debates over shoreland management can generate heated opinions among residents who care strongly about how their lakes are preserved and enjoyed.

      Such is the case in Windemere Township. In 2025, Windemere Township's Board of Supervisors (the "Board") adopted a shoreland management ordinance ("2025

1

Ordinance") that imposed new restrictions on the use of property near lakes. Plaintiffs, who own land on lakes in Windemere Township, responded by filing this lawsuit, which seeks to overturn the 2025 Ordinance on constitutional, statutory, and common-law grounds. Then, on April 7, 2026, the Board repealed the 2025 Ordinance and replaced it with a new shoreland management ordinance ("2026 Ordinance"). Anticipating that the Board would adopt the 2026 Ordinance, Plaintiffs filed a motion for a preliminary injunction on March 17, 2026, asking this Court to enjoin the 2026 Ordinance during the pendency of this litigation. Plaintiffs have not satisfied the requirements for the extraordinary relief of a preliminary injunction, so their motion must be denied.

## BACKGROUND

Windemere Township is located in Pine County, Minnesota, and is blessed with an abundance of natural bodies of water, including Sturgeon Lake, Island Lake, Sand Lake, and Johnson Lake. ECF No. 1-1 ¶¶ 5–6, 13. In 2023, as part of a settlement with the Minnesota Department of Natural Resources, Windemere Township agreed to amend its shoreland management ordinance. ECF No. 45 ¶ 4; ECF No. 36 ¶ 4. Windemere Township's Planning Commission began the process of revising the shoreland management ordinance and, in December 2024, approved a final draft ordinance that largely mirrored Pine County's own shoreland management ordinance. *See* ECF No. 36 ¶¶ 4–9.

However, after a change in composition of the Planning Commission, the new Planning Commission rewrote the final draft ordinance to include additional land-use restrictions that went beyond the restrictions in Pine County's shoreland management ordinance. *Id.* ¶ 10. The new revisions engendered opposition from the community, *see*

2

*id.* ¶ 11; ECF No. 38 ¶ 7, but on March 4, 2025, the Board adopted the 2025 Ordinance, ECF No. 45 ¶ 6.

On April 1, 2025, Plaintiffs commenced this litigation seeking to invalidate the 2025 Ordinance based on violations of the federal and Minnesota Constitutions, conflicts of interest, abuse of process, and civil conspiracy. ECF No. 1-1 ¶¶ 142–241. Plaintiffs allege, generally, that the 2025 Ordinance caused most lots in the shoreland to become nonconforming and would severely restrict the use of property in the shoreland. *Id.* ¶¶ 58, 111–13. Several Plaintiffs explain that these restrictions have personally disrupted their lives.

**Tom Anderson** purchased land in Windemere Township with the intention of building a home, and prior to the adoption of the 2025 Ordinance, had developed plans for building that home. ECF No. 37 ¶ 3. However, the adoption of the 2025 Ordinance made it "impossible" for him to proceed with those building plans and created significant uncertainty regarding the future use of his land. *Id.*

**Lynn Folsted** has lived in Windemere Township for 30 years and purchased two buildable lots on Johnson Lake. ECF No. 51 ¶ 3. In 2015, Folsted combined her two lots into one parcel, with the understanding from Pine County that she could return the property to its original two lots at any time. *Id.* ¶ 5. Folsted's goal was eventually to separate the lots to provide a place for her daughter to build at the time that was right for her. *Id.* However, due to the minimum lot size requirements in the 2025 Ordinance, Folsted is unable to re-divide her property as she previously expected. *Id.* ¶ 10.

**Daniel Benzie** and his wife gifted a parcel of their property to one of their grandchildren in April 2024 and set about subdividing the parcel and obtaining building and driveway permits.  ECF No. 50 ¶ 8.  But Benzie alleges that officials from Windemere Township, including Planning Commission member Vern Anderson and Zoning Administrator Scott Beckman, impeded their construction project by setting up various logistical roadblocks.  *Id.* ¶¶ 8–11, 15.  Benzie explains that the 2025 Ordinance "prohibited" him from further subdivision of his property, and he states that as a result of the 2025 Ordinance, he is "unable to use or divide [his land] as permitted under prior ordinances," which has delayed his "plans to transfer property to [his] granddaughter" for over a year.  *Id.* ¶ 16.[1]

After the Board adopted the 2025 Ordinance, the Planning Commission continued to hold public discussions and deliberations to develop additional new zoning ordinances to address what the Planning Commission and Board saw as ongoing shoreland concerns.  ECF No. 45 ¶¶ 7–8.  On March 3, 2026, the Planning Commission held a public hearing on an amended shoreland management ordinance.  ECF No. 36 ¶ 15.  According to Plaintiffs, this amended shoreland management ordinance would enact new land-use restrictions and extend them to properties beyond the shoreland.  ECF No. 37 ¶ 8.

---

[1]   Plaintiffs also offer the declaration of Noelle Nielsen, who describes similar disruptions resulting from the 2025 Ordinance.  ECF No. 38.  But Nielsen is not a named plaintiff, so Plaintiffs cannot use Nielsen's injuries to show "the threat of irreparable harm *to the moving party.*"  *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 316 (8th Cir. 2009) (emphasis added).  The Court therefore does not consider Nielsen's injuries in considering irreparable harm to Plaintiffs.  In any event, Nielsen's asserted injuries largely fail to demonstrate irreparable harm for similar reasons as Plaintiffs' asserted injuries fail to do so.

Fearing that the Board would adopt this amended shoreland management ordinance at its meeting on March 19, 2026, Plaintiffs moved this Court for a temporary restraining order or preliminary injunction to enjoin adoption and enforcement of an amended shoreland management ordinance.  ECF No. 31.  Plaintiffs did not amend their complaint with information about the amended shoreland management ordinance, and their opening brief focuses entirely on the purported illegality and harms flowing from the 2025 Ordinance.  *See generally* ECF No. 32.  The Court declined to issue an ex parte temporary restraining order and directed the parties to brief Plaintiffs' motion in accordance with Local Rule 7.1(c).  ECF No. 41.

On April 7, 2026, the Board repealed the 2025 Ordinance and replaced it with the 2026 Ordinance.  ECF No. 45 ¶ 10; *see* ECF No. 45-1.  Plaintiffs state that the 2026 Ordinance contains "comprehensive and materially more restrictive" provisions than the 2025 Ordinance.  ECF No. 47 at 3–5, 16–17.  For example, the 2026 Ordinance retains the increased minimum lot sizes and width requirements from the 2025 Ordinance and expands those requirements outside the shoreland and applies them to the platting process.  ECF No. 45-1 at 49.  The 2026 Ordinance also modified setback requirements for residential properties.  *Compare* ECF No. 26-4 at 39, *with* ECF No. 45-1 at 49.  The 2026 Ordinance further provides that nonconforming uses of land "will not be permitted to continue without restriction," and that "all nonconforming uses shall be eventually brought into conformity."  *Id.* at 145.  Plaintiffs also argue that the 2026 Ordinance purports to make its new restrictions retroactive for any lots subdivided in the past 20 years.  ECF No. 47 at 4 (citing ECF No. 45-1 at 151).

### ANALYSIS

A plaintiff who requests a preliminary injunction must establish that: (1) he is likely to succeed on the merits of his claims; (2) he is likely to suffer irreparable harm without preliminary relief; (3) the balance of equities tips in his favor; and (4) the injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22.

### I.      Likelihood of Success on the Merits

In deciding whether to grant a preliminary injunction, the moving party's "likelihood of success on the merits" is the "most significant" factor. *S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 776 (8th Cir. 2012) (citation omitted).

Here, Defendants correctly observe that Plaintiffs' complaint contains no allegations related to the 2026 Ordinance—rather, the complaint only challenges the now-repealed 2025 Ordinance. ECF No. 44 at 6; *see* ECF No. 1-1. A party moving for a preliminary injunction "must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam). This relationship requirement is necessary because the purpose of a preliminary injunction is "to preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits." *Id.* But if a preliminary injunction relates to issues that "will not be addressed, let alone resolved, at trial," then there is a fatal mismatch between the claims asserted in the complaint and the relief sought through an injunction. *Zhou v. Int'l Bus. Machs. Corp.*, 167 F. Supp. 3d

1008, 1011 (N.D. Iowa 2016); *see also De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 220 (1945) (explaining that a preliminary injunction is appropriate "to grant intermediate relief of the same character as that which may be granted finally").

That fatal mismatch dooms Plaintiffs' motion. To be sure, there is some factual overlap between the injuries claimed in Plaintiffs' motion and the conduct challenged in the complaint: at the end of the day, both the complaint and Plaintiffs' motion relate to Windemere Township's shoreland management regulations. But Plaintiffs considerably oversell that overlap when they assert that the 2025 Ordinance and 2026 Ordinance contain "the same regulatory scheme, adopted through the same deficient process, and justified by the same unsupported rationales." ECF No. 47 at 9. Indeed, Plaintiffs argue elsewhere in their briefing that the 2026 Ordinance contains "materially more restrictive" provisions than the 2025 Ordinance. *See* ECF No. 32 at 9; ECF No. 47 at 3–5, 16–17. And they concede that the two ordinances resulted from different deliberative processes (even if Plaintiffs allege that similar defects permeated both deliberative processes). *See* ECF No. 32 at 3–4; ECF No. 47 at 2–3.

The reality, then, is that the 2025 Ordinance and the 2026 Ordinance are two different ordinances resulting from two different legislative processes. But Plaintiffs' motion only seeks to enjoin the 2026 Ordinance, which is not challenged in the complaint. *Compare* ECF No. 1-1 (challenging the 2025 Ordinance), *with* ECF No. 32 (seeking to enjoin the 2026 Ordinance). Consequently, the merits of a challenge to the 2026 Ordinance "will not be addressed, let alone resolved" at a later stage of these proceedings because the operative complaint does not challenge that ordinance. *Zhou*, 167 F. Supp. 3d at 1011.

Although Plaintiffs' "new assertions might support additional claims against" Defendants, "they cannot provide the basis for a preliminary injunction in this lawsuit" as it stands today. *Devose*, 42 F.3d at 471.

Defendants' argument also reveals a related flaw in Plaintiffs' motion. Plaintiffs' analysis on the likelihood-of-success factor in their opening brief relates entirely to Plaintiffs' likelihood of success on their challenge to the *2025 Ordinance*, ECF No. 32 at 12–17, but the relief Plaintiffs seek is an injunction against the *2026 Ordinance*, *see* ECF No. 40. Plaintiffs offer no argument in their opening brief, for example, that the 2026 Ordinance violates their constitutional rights or is otherwise invalid. And although Plaintiffs offer several arguments to challenge the 2026 Ordinance in their reply brief, ECF No. 47 at 15–19, those arguments come too late, for "federal courts do not, as a rule, entertain arguments made by a party for the first time in a reply brief."[2] *Anderson v. Rugged Races LLC*, 496 F. Supp. 3d 1270, 1285 n.11 (D. Minn. 2020).

The scope of injunctive relief "is dictated by the extent of the violation established." *Nebraska v. Biden*, 52 F.4th 1044, 1048 (8th Cir. 2022) (citation omitted). Here, if anything, Plaintiffs would have established a likelihood of success on its challenge to the 2025 Ordinance, which would have justified an injunction against the 2025 Ordinance.

---

[2]   To the extent that Plaintiffs complain that they could not have argued against the 2026 Ordinance in their March 17, 2026 opening brief because the 2026 Ordinance was not enacted until April 7, 2026, *see* ECF No. 47 at 10–11, that observation only highlights the pitfall of prematurely seeking a preliminary injunction against a law that has not yet been enacted. *See Flower Cab Co. v. Petitte*, 685 F.2d 192, 194 (7th Cir. 1982) ("[I]t would obviously be premature to enjoin the enforcement of an ordinance that has not yet been enacted, and for all we know may never be.").

That does not, however, justify an injunction against the 2026 Ordinance, given that Plaintiffs have not "established" any "violation" resulting from that ordinance. *Id.* Plaintiffs are therefore unlikely to succeed on a claim that is not alleged in the complaint nor properly addressed in Plaintiffs' briefing.[3]

## II.   Irreparable Harm Absent Injunctive Relief

Plaintiffs' sparse evidence of irreparable harm similarly fails to convince the Court that injunctive relief is warranted. Plaintiffs first point to the harms that Anderson, Folsted, and Benzie have suffered in having their construction and property plans thwarted. *See* ECF No. 32 at 9–10; ECF No. 47 at 19–21. But those harms have already come to pass and, in fact, are largely attributable to the 2025 Ordinance, not the 2026 Ordinance (which, again, is the ordinance that Plaintiffs are actually seeking to enjoin). *See* ECF No. 37 ¶ 3 (Anderson explaining that the 2025 Ordinance made it "impossible" for him to build his home); ECF No. 51 ¶¶ 5, 10 (Folsted explaining that she cannot divide her lot due to the 2025 Ordinance's minimum lot requirement); ECF No. 50 ¶ 16 (same for Benzie).

Anderson, Folsted, and Benzie do not explain how the 2026 Ordinance will injure them any more severely than the harms they have already experienced in the past because of the 2025 Ordinance.[4] Although Anderson suggests that the 2026 Ordinance will lead to

---

[3]   The Court need not address Defendants' argument that Plaintiffs' claims in the operative complaint are rendered moot by the enactment of the 2026 Ordinance. *See* ECF No. 44 at 12–13.

[4]   To the extent that Plaintiffs' injuries from the 2025 Ordinance are relevant to their request to enjoin the 2026 Ordinance, the Court determines that Plaintiffs unreasonably delayed in seeking injunctive relief by waiting 12 months after the 2025 Ordinance was

further "delay" and "uncertainty," ECF No. 37 ¶¶ 12–13, these conclusory allegations of harm do not illuminate why this future delay and uncertainty is any different from the delay and uncertainty Anderson has already suffered as a result of the 2025 Ordinance.  Neither past harm nor speculative future harm counts as irreparable harm for a preliminary injunction.  *See Miller v. Honkamp Krueger Fin. Servs., Inc.*, 9 F.4th 1011, 1015 n.3 (8th Cir. 2021) (citation omitted) (explaining that the "purpose of a preliminary injunction is not to remedy past harm"); *Midwest Sign & Screen Printing Supply Co. v. Dalpe*, 386 F. Supp. 3d 1037, 1055–56 (D. Minn. 2019) (citation omitted) (rejecting "conclusory" risk of irreparable harm).

Anderson also suggests that construction costs will become more expensive under the 2026 Ordinance.  ECF No. 37 ¶ 10.  Although these claims of harm are overwhelmingly conclusory (and fail for that reason alone), they also fail for the simple reason that "[e]conomic loss, on its own, is not an irreparable injury so long as the losses can be recovered."  *Choreo, LLC v. Lors*, 164 F.4th 667, 971 (8th Cir. 2026) (citation omitted).  Although Anderson suggests in a passing footnote that Defendants' invocation of legislative immunity could render any monetary damages unrecoverable, ECF No. 47 at 21 n.5, the Court observes that at least one Defendant—Windemere Township—is not shielded by legislative immunity, *see Rinne v. Camden County*, 140 F.4th 470, 473 n.2 (8th Cir. 2025) (citation omitted) (explaining that municipalities "do not enjoy legislative

---

enacted to seek an injunction.  *See Adventist Health Sys./Sunbelt, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 17 F.4th 793, 806 (8th Cir. 2021) (holding delay of 12 months in seeking injunctive relief failed to demonstrate irreparable harm).

immunity from suit—either absolute or qualified—under § 1983").

Plaintiffs finally raise purported harms suffered by the public, including the continued expenditure of public funds on "costly ordinance revisions" that incur "legal, consulting, and planning" costs and the general instability of land-use regulations in Windemere Township.  ECF No. 32 at 10–11.  But the Court here considers only "the threat of irreparable harm *to the moving party*."  *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 316 (8th Cir. 2009) (emphasis added).  Although harms to non-parties may be evaluated in considering the fourth preliminary-injunction factor—public interest—they alone cannot establish irreparable harm to a "moving party."  *Id.*; *see Iowans for Alternatives to Smoking & Tobacco, Inc. v. Iowa Dep't of Revenue*, 781 F. Supp. 3d 724, 730–31 (N.D. Iowa 2025).  Plaintiffs do not explain how these purported harms impact them personally, except for the ways that the Court has already discussed above.  Having failed to show irreparable harm to their own personal interests, Plaintiffs may not rely on purported harms to non-parties to satisfy this factor.

Because Plaintiffs do not demonstrate irreparable harm in the absence of injunctive relief, the Court denies Plaintiffs' motion.  *See Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003) ("Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction.").

11

## CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for a Preliminary Injunction (ECF No. 31) is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: May 19, 2026                    *s/Laura M. Provinzino*
                                        Laura M. Provinzino
                                        United States District Judge